ELLIS, Judge.
This is a suit for overtime rental, repairs and transportation charges arising out of the rental by the plaintiff of a piece of heavy *445 equipment, consisting of a dragline to the defendant for the purpose of laying pipe. Plaintiff contended in the suit that he had rented to the defendant company the equipment for a base price of $1250.00 per month and that under the customary general industry practice, such rental was computed on a base rate use of the machine eight hours per day, five days a week, or, 176 hours per month of a thirty day consecutive day period and that the machine had been used 611/2 hours overtime during the period October 9, 1961 through November 6, 1961 and therefore, he is entitled to overtime pay of an additional $449.75. Plaintiff also contended that he is entitled to transportation charge of $37.50 for moving a machine from the job site of the defendant company upon the termination of the lease and $30.00 transportation charge for a clamshell bucket to and from the defendant company’s job site in accordance with an agreement entered into between the parties. Plaintiff further claimed that the defendant company failed to keep the machines properly greased causing a breakdown of a bearing and damage, which required $596.49 to repair. Plaintiff also claimed the sum of $211.15 for use and appropriation of an eight and one-half ton ball bearing swivel hook but on the trial of the case it was shown that this had been returned to its rightful owner and was no longer at issue.
After trial of the case the lower court awarded the plaintiff $426.12 for overtime, $596.39 for repairs and $37.50 for transportation charged in removing the equipment from the defendant’s company job and $15.00 for transportation of the clamshell bucket one way, for a total of $1075.11 and defendant appealed. Plaintiff neither answered nor appealed from the judgment.
The defendant appellant contends that the lower court erred in disregarding the contract price and casting the defendant in judgment for so-called overtime as the evidence does not show the existence of a so-called industry practice relative to overtime use and transportation charges for rental equipment. And, secondly, if such a practice existed, it was not applicable to this case because defendant had no knowledge of the custom and alternatively, only a nominal amount of daily overtime occurred, and error was committed by the court in its finding that the defendant was liable for damage to the equipment, as the machine was defective when delivered and the damage thereto was not attributable to defendant. It is clear from the record that plaintiff and defendant had a verbal agreement whereby the former would rent to the latter the equipment for $1250.00 per month. There was no mention of, nor agreement as to overtime or transportation charges. Plaintiff’s entire case rests upon the contention that there was an industry practice which required defendant in this case to pay overtime and transportation charges, even though the agreement was silent thereto as the monthly rate is considered in the industry the base rate, which limited the use of the machine to 176 hours per month and any use over and above that would be paid for as overtime use and also that for the same reason transportation charges were due both ways by the lessee.
Plaintiff contended that the defendant’s use of the machine caused the damage and he is entitled to recover the cost of repairing the machine.
Article 1964 of our LSA-Civil Code is particularly applicable to those things which may be supplied by law, equity or usage and it reads in part:
“Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.”
Also Article 1966 of our LSA-Civil Code and we quote, in part:
“By the word usage mentioned in the preceding articles,, is meant that which is generally practiced in affairs of the same nature with that which forms the subject of the contract.”
*446 In Nebel v. Wise and Miller, 6 La.App. 773, in which the Supreme Court of Louisiana denied Writs of certiorari and review, the Orleans Court of appeal in considering' a case involving custom and usage and particularly Article 3 and 1966 of LSA-Civil Code stated:
“These articles show custom or usage may be applied to the solution of ambiguous contracts only when both parties to the contract are thoroughly familiar with the custom, and we think that proof of knowledge in plaintiff of the custom and acquiescence therein after such knowledge are essential to sustain the defense in this case.”
There was nothing ambiguous in the actual agreement made between either parties in this suit and we thoroughly agree with the statement of the trial judge in his reasons for judgment that:
“It is undisputed in this suit that no agreement was made between the parties as to overtime, repair charges or any other incidental provisions or conditions other than that the rental was to be for $1250.00 per month.”
Although there is mentioned many times throughout the questions and answers to same in the record, as well as in plaintiff’s brief the term “base” as being applicable to the agreement as to the amount of $1250 per month, such an understanding or word was never mentioned as far as the record reveals between the plaintiff personally or his representative and the defendant in fixing the amount or by the defendant in accepting the amount. There was no understanding that the $1250 was to be a base amount. However, plaintiff contends that under the usage, custom or practice of the business of renting heavy equipment that it is understood so much per month to be considered a base amount, thereby limiting the use of the machine to 176 hours in a 30 day period and any use over and above that would be considered overtime, for which the lessor would be entitled to extra pay. However, it is clear from the record that every witness said the amount of overtime use would depend upon whether the lessor would expect payment, as 15 or 20 hours would not be considered sufficient overtime to demand extra pay. However, it is plaintiff’s contention that transportation, both ways, is the general practice in leasing, therefore it did not have to be specifically mentioned in the contract. As to the repairs on the machine in question if they were proven to be due to the neglect of the defendant-lessee then under the law he would be responsible and should be cast in judgment for the amount it cost to repair the machine.
Plaintiff testified that he fixed the price personally for the rental of the machine at $1250 per month, although he stated he had just taken the machine off the job at $1650 a month. He further testified “ * * * I think that the A.E.D. rental rate, the suggested rate, is about $1788, and I usually try to get about 10% less than the suggested price for my machines, which has always been competitive in this business, this area.” A.E.D. refers to a booklet containing a compilation of rental rates for construction equipment compiled by Associated Equipment Distributors, which is one of plaintiff’s main offerings as evidence in this case, to sustain his contention that by custom and usage the rental fixed per month by him should be considered a base rate and that any use of the machine over 176 hours for a 30 day period would entitle him to overtime payments. We will discuss this booklet hereafter. On direct examination plaintiff was asked if he would have rented the dragline for $1250 a month, assuming that he had been informed that it was to be used 12 hours a day or 6 days a week and he answered, “I don’t believe, sir, no. The reason that I put that price on it, Mr. Van-daworker, was laying pipe, which does necessitate a lot of crawling or walking, and I figured that it would fairly easy work for a machine, in the neighborhood of 90 to 100 or 120 days time limit on it, why, was the reason that I put that ridiculously low price on it, including the bucket.” We *447 believe that the witness meant to say which does not necessitate a lot of crawling or walking, however, either way is immaterial. On cross examination he was asked why he happened to drop his price $400 a month to rent the equipment to the defendant, without first finding out if he could pay $1650 a month and he answered, “I don’t know that that makes too much difference, except I set over here with that machine on the side of the levee last fall, with the rain and everything, and didn’t get anything out of it, and I figured — like I stated a while ago — that this was a fairly easy job, laying that pipe, and advance rent for the machine for three or four months, and I cut the price, was the only reason I did it.” The record does not reveal that there was any definite time that the defendant agreed to keep the machine and in fact, Mr. Aucoin, who first contacted the defendant in order to rent the plaintiff’s machine for this particular job on behalf of the plaintiff, frankly testified that the several months duration was talked about or mentioned in the conversation but actually there was no agreement to that effect. It would really appear from the testimony that plaintiff was most anxious to rent this machine, particularly on this easy job and fixed the compensation for rental at $1250 a month without any equivocation or suggestion that it should be higher, that as he stated he was the one that set the price, “nobody twisted my arm at all.” He remembered that the machine had been idle the fall before quite a bit.
And as previously stated plaintiff relies to a great extent upon the booklet which has been offered in evidence and described hereinabove. As to this booklet compiled by the Associated Equipment Distributors on rental rates for construction equipment on the front is printed “To Be Used For Information Purposes Only.” Under the heading “FOREWORD” on page 2 of this booklet, we find the following:
“Caution. The Rental rates and terms set forth in this compilation are for informational purposes only and not to suggest or to influence the rates or conditions of rental of any item of equipment, as this is a matter which must be determined by the lessee and the lessor of the equipment involved. This is not an attempt to prevent any distributor from charging more or less than the rates set forth in the compilation.
“It would constitute an unfair trades practice for any distributor, or any other person, to enter into any agreement, understanding, combination or concerted action with one or more other distributors, or with one or more other persons, to adhere to the rental rates fixed in this compilation, or to refrain from charging less than such rental rates.”
On Page 3 we find the following:
“GENERAL INDUSTRY PRACTICES.
“THE FOLLOWING IS FOR INFORMATIONAL PURPOSES ONLY TO EXPLAIN THE GENERAL INDUSTRY PRACTICES OF EQUIPMENT RENTAL, AND IS NOT TO SUGGEST OR INFLUENCE THE RATES OR TERMS OF RENTAL OF ANY ITEM AS THESE ARE MATTERS WHICH MUST BE DETERMINED BETWEEN THE LESSEE AND LESSOR.
“TO AVOID DISAGREEMENTS, THE RENTAL TERMS SHOULD BE AGREED UPON PRIOR TO RENTAL AND, ESPECIALLY WHERE LARGER EQUIPMENT IS INVOLVED, THE TERMS SHOULD BE SPELLED OUT IN A WRITTEN AGREEMENT SIGNED BY BOTH THE LESSOR AND LESSEE.
“It is the general practice in the industry to base rates upon one shift of 8 hours per day, 40 hours per week, or 176 hours per month of a 30 consecutive day period.”
*448 This booklet is nothing more than it precisely sets forth in hold type to be used for informational purposes only and cautions the lessee and lessor that such is the purpose set forth in the compilation and it is not to suggest or to influence the rates or conditions of rental of any item of equipment and that is a matter which “must be determined by the lessee and the lessor of the equipment involved.” Again from page 3 quote, it clearly states that to avoid disagreements the rental terms should be agreed upon prior to rental and even suggests that the terms should be spelled out in a written agreement signed by both the lessor and the lessee. It does state that it is the general practice in tire industry to base rates upon one shift of 8 hours per day, 40 hours per week, or 176 hours per month, but this is subject to the above, that the rental terms should be agreed upon prior to rental and should be spelled out in a written agreement signed by the lessor and lessee, and even in a verbal agreement they should be spelled out. Plaintiff testified he is fully familiar with this booklet and he did exactly contrary to what the booklet says unless he intended, which we believe, that he did, to rent the machine on a straight $1250 per month because he thought the job was easy and it had laid up the fall before and he did not want that to happen again. Otherwise, he would have certainly mentioned that $1250 was a base rate and that if it was used more than 176 hours in a month as the booklet suggests he would have insisted on that agreement with the defendant. He mentioned no such thing at any time to the commission agent, Mr. Aucoin, who first approached and rented the machine for the plaintiff to the defendant. On the other hand, we have the testimony of Harris, who was an employee of and rented the machine for the defendant company, that the word base was never used and that it was his understanding that he was to pay $1250 a month for the use of the machine and he could use it as much as he pleased. There was no limitation. And further that he had rented the machine in place of the plaintiff’s machine when it broke down for $1000 a month without any mention of overtime or any claim for overtime. It was shown that the machine, which he rented was a smaller machine than plaintiff’s but would do the work just as well. He additionally testified that he knew of no such custom, practice or usage that would require him to be limited in the use of the machine where it was rented for a specific amount per month, without any limitation. We find no reason in this record for disbelieving Harris, the defendant’s superintendent when he states that he knew of no custom, usage or practice in the rental of heavy equipment whereby the lessor merely agreed to rent his equipment for $1250 per month and it would then be understood by the custom of the business that the use would be limited to 176 hours per month, lessee would pay transportation both ways. In fact he is supported by the A. E. D. booklet, which plainly states that it is for information purposes only and only to be used as a guide between the parties. And specifically advises the parties to spell out the terms in a written agreement. It does not even suggest a verbal agreement.
The plaintiff has offered the testimony of Robert L. Harris, who is in the construction business for 15 or 20 years in the Baton Rouge area and he w.as asked on direct the hypothetical question that assuming a rental agreement for a dragline is entered into between the construction company and the renter or owner of the dragline and no mention was made specifically in the negotiations concerning the amount of time that the dragline would be used, and the rental is on a base rate per month for $1250, what does that contemplate, so far as the industry is concerned, so far as the amount of use which the contractor can put the machine to without incurring additional rental charges, and he answered, “Well, when you say the base figure, we generally think that you could use it 8 hours a day or one shift which is 8. I don’t think anybody says anything about a few hours, one way or another, but they *449 have some statements in a book there that if you go into overtime or second shifts, or don’t even use the word second shift— overtime — that there is other compensation due the man that owns the machine.” He was further asked the custom or practice in the area, if the contractor who rents such a machine knows that he will have to pay for additional use of the machine if they use it more than 176 hours a month and he answered, “We generally accept the book printed as a guide for us.” He frankly stated that the contractors for the Baton Rouge area did not necessarily follow the book to a “T”, but they use it as a guide and it was generally accepted. As to transportation charges he finally stated that in most cases in the absence of specific agreement as to transportation between the parties the man that leases the machine would pay one way and “then I think they should have a specific agreement as to who will pay for it the other way.” He was of the opinion that “Mr. Meredith and Mr. Harris should have agreed on the second move” of the machine, who was to pay. He did change his testimony somewhat when pressed and said that the man that leased the equipment pays for both moves. We don’t know which he really meant to stick to. On cross examination he testified that he had had occasion to rent a good bit of equipment and that he had had both written and verbal contracts depending on the people he rented to and that those that you did not know quite so well he might want a written contract. When asked about how many times he had moved equipment to his job site, both ways, to and from the job, he couldn’t say how often because “so many times, we move them — it depends on the length of the rental — and so many times, the other fellow pays for it.” Again he testified that there were many times that he didn’t pay for the transportation of the equipment rented either way. Also that whenever he made a contract, verbal or written, concerning the rental of equipment, that he and the lessee had a specific agreement as to what the transportation charges would be and by whom paid.
Plaintiff introduced the testimony of Robert Cann, a salesman for General Equipment who stated that he was familiar with the A. E. D. publication and that while his company did not rent but sold heavy equipment that “this book is just used as something to go by.” On direct examination he was asked if he was familiar, generally, with the custom in the Baton Rouge area relative to the rental of equipment of the type involved in this case and he answered, “I don’t think you will find any two rentals alike,” and that the information on Page 3 of the book entitled “General Industry Practices” is “More or less of a guide put up there, that is all, but it is not followed.”
Mr. Emanuel, who was placed on the stand by the plaintiff, was a partner in an industrial rental service in Baton Rouge and his testimony was based on the absence of any agreement, either written or verbal, which we do not have in this case. He stated that there could be deviations of rates and customs, which are normally set forth at the time the machinery is rented or leased from the lessor and stated “of course, competition wise, you have to juggle rates, but general practices are normally followed.” As to the usage or custom for the payment of transportation charges he said that in the absence of any regular written agreement, the lessee would bear expenses both ways. On cross examination he testified that if he did not know his customers he made it quite clear to them that $1250 a month would mean 176 hours. Also that if he was renting to a customer that had never before rented from him he would explain that the monthly figure meant 176 hours a month. This would be in effect a specific agreement that $1250 was the base rate and he would pay for overtime using 176 hours per month as a month’s use. As to transportation charges he testified “ * * * I have generally always known beforehand who would bear the expense.” He also frankly stated that the prices set forth in the A. E. D. “are suggestive and merely a guide.”
*450 Mr. J. K. Stringer, witness on behalf of the plaintiff, very frankly testified that he had an agreement and knew what was going to be paid for his machinery and who was going to pay for the transportation and “I don’t use any book whatsoever.” He also stated that “any piece of equipment I deliver, or rented from, anything I have to do with, I have got a delivery, I have got an invoice, I have got a return with hours and dates and time it went out and everything.” In other words, this witness testified that he had everything understood by agreement.
The testimony in this record falls far short of proving that the parties might reasonably have been supposed to have been silent upon the fact that $1250 per month was a base rate and overtime would be due for all hours over and above 176 that the machine had been used in a month's period or that the transportation charges would be due both ways by the lessee because of a knowledge from usage that such facts would be supplied or read into the agreement. We are therefore of the opinion that the lower court was in error in awarding the judgment for the overtime claim of the plaintiff.
As to the demand for $596.49 which plaintiff alleged was due by the defendant for failure to keep the machine properly greased, which caused a complete disintegration of the bearings in the swing shaft, we believe the record supports this item and the judgment of the lower court should be affirmed in this respect. We base this belief upon the fact that this machine was delivered in good operating order other than the swing shaft, which was fixed by the operator employed by the defendant company at the instance and request of the plaintiff. However, it is shown that the machine had gone through a rather expensive repair job prior to its removal to the job of the defendant and the operator frankly admitted on the stand that he had not greased the bearings because he did not think they needed it. He did not even inspect them according to the testimony and there is no doubt that they were completely burned up and that is why the defendant company notified the plaintiff that the machine was out of order and could not be used any further on the job. The testimony convinces us that the lack of proper lubrication of the bearings was the cause of the breakdown to the machine and therefore, the award in this respect by the lower court will be affirmed.
As to the charge for transportation of the machine from the job, we believe that under the facts the defendant company should pay this charge, not because of any specific agreement to that effect, but the breakdown was caused by the negligence of the operator employed by the defendant and it became necessary to move the machine to the shop where it could be repaired.
The defendant company had, without protest, paid the transportation charge to the job as well as a month’s rent of $1250 together with tax and a few other charges soon after it was moved on the job.
We also affirm the award of the lower court in the amount of $15.00 for transportation of the “bucket” upon the termination of the rental contract by virtue of the fact that the machine could no longer be used due to the negligence of the operator in failing to properly grease the bearings on the swing shaft.
We note that the district court in its written reasons in the record rendered the judgment for $1098.74, but on rehearing reduced the amount of overtime so that the final judgment was in the sum of $1075.11.
For the above and foregoing reasons the judgment in the sum of $1075.11 as rendered by the lower court is hereby reduced to the sum of $648.99 and as thus amended the judgment is affirmed. The cost of this appeal to be paid by the plaintiff.
Amended and affirmed.